# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JEFFRY FEIGER, | Civil No. 05cv1754-L(PCL) |
| Petitioner, | **ORDER ADOPTING REPORT AND RECOMMENDATION;** |
| v. | **OVERRULING OBJECTIONS;** |
| RODERICK Q. HICKMAN, | **DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondent. | |

Petitioner Robert Jeffry Feiger, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Respondent filed an answer and a supporting memorandum of points and authorities to which petitioner filed a traverse. The case was referred to United States Magistrate Judge Peter C. Lewis for a report and recommendation ("Report") pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.3. The magistrate judge's Report recommended the petition be denied. Petitioner filed a timely Objection to the Report.

A district judge "may accept, reject, or modify the recommended decision" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. FED. R. CIV. P. 72(b); *see* 28 U.S.C. § 636(b)(1). "The court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Section 636(b)(1) does not require some lesser review by the

district court when no objections are filed.  *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made, but not otherwise*."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in the original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review).

## DISCUSSION

**A.     Factual Background**

Petitioner was convicted of six counts of lewd acts upon a child.  The jury made true findings on allegations that petitioner was a habitual sex offender under Penal Code § 667.71(a), and that petitioner's prior lewd-act convictions in 1984 and 1986 constituted strikes under Penal Code § 667(b)-(i).  As a result of his conviction, petitioner was sentenced to prison for indeterminate terms of 25 years to life each on Counts one through four and seven, tripled the sentences under Penal Code § 667(e)(2)(A)(1), and ordered the terms served consecutively.  The court also imposed a determinate sentence of eight years on Count five and two years, being one-third the middle term on Count six, and order those sentences served consecutively.  Thus, petitioner's total sentence is 375 years to life plus ten years.

The parties do not dispute the factual findings of the California Court of Appeals that follows:

> In 1983, Kirk H., then about 13 years old, started working for Feiger in a surf shop in Palos Verdes.  Kirk spent the night at Feiger's house.  Feiger massaged Kirk's back, told him to roll over, rubbed his chest and stomach and then his penis under his underwear.  When Kirk asked Feiger to stop, Feiger kept saying, "Just a little longer."  Feiger touched kirk several additional times during the night.  This incident was admitted pursuant to Evidence Code section 1108.
> In the 1980's Feiger was convicted of child molest, sentenced to prison for five years and was on parole for an additional three years.  The terms of his parole prohibited him from being around minors without an adult guardian or parent being present.  His parole ended January 1994.
> While Feiger was on parole, he started Luna Bay, a company that designed, manufactured and sold boy's beachwear, sportswear, and swimsuits.  Feiger hired boys to model his clothing.  In exchange for their modeling, Feiger gave the boys clothing, invited them to parties at his house, and took them to the beach, movies and theme parks and to Las Vegas.  Often, the boys would spend the night at Feiger's house.  Over the course of the years, about 50 boys spent the night at his home, Feiger testified between 1993 and 2000 he spent "many" nights alone with

the boy models.

When the boys spent the night at Feiger's house, he would give them "fancy pants" and "nighties" to wear. At trial, the boys described the fancy pants as being silky, like "speedos," and having a bow in the middle. The nightshirts were described as being flannel and looking like a girl's nightgown. Feiger testified they were Luna Bay nightshirts intended for young boys.

**Count 1 - Matthew N.**

Matthew modeled for Luna Bay about one year when he was 12 or 13 years old during the year 2000. At one point, Matthew spend one or two nights per week at Feiger's residence, sometimes when other boys were also present. Feiger would give the boys fancy pants and nighties to wear. While the boys watched movies, Feiger massaged their backs and shoulders. When Feiger was alone with Matthew, he rubbed Matthew's feet and legs. Feiger pulled up Matthew's nightshirt, touched his lower back, and on "the sides and stuff." One time when he was along with Matthew, Feiger asked if Matthew wanted his thighs rubbed. On one occasion Feiger put his hands on the sides of Matthew's underwear and pulled them up for Matthew.

**Count 2, 3, and 7 - Stephen C.**

Stephen met Feiger when he was about four years old while Stephen's stepbrother was modeling for Luna Bay. When Stephen was about six years old, he began modeling for Luna Bay. Between the time of six and 12 years old, Stephen spent at least a hundred nights at Feiger's house. About 75 percent of the time Stephen spent the night at Feiger's house, Feiger gave him a back rub.

Sometimes when Stephen was alone in the house with Feiger, Feiger would rub his lower back or his "butt" under the fancy pants and sometimes Feiger would become angry if Stephen said no. (Count 2.) Sometimes, Feiger, rubbed Stephen from his shoulder to the small of his back and from his upper thighs to his ankles. (Count 3.) As Stephen got older, he sometimes felt uncomfortable about the backrubs.

On one occasion when Stephen was 11 years old, Feiger promised to buy a new shirt for Stephen if he could buy Stephen a pair of fancy pants. They were in a department store. Feiger picked out a pair of girl's underwear and said he was going to buy them for Stephen. When Feiger paid for the underwear, he lied to the sales clerk, telling her he had a daughter.

Toward the end of the spring or the end of the summer of 2000, as Stephen came out of the shower at Feiger's home, Feiger, wearing only boxers, entered the bathroom, grabbed a towel and asked if could dry Stephen. When Feiger dropped the towel and Stephen bent to pick it up, Feiger put his penis "in" Stephen. It was painful. When Stephen tried to get away, Feiger grabbed him, held his arms behind his back, angrily told Stephen to hold still and called him a "little Fu---er." Stephen escaped from Feiger, grabbed his clothes and walked three hours from Feiger's home in Oceanside to his own home in Vista. (Count 7.)

When Feiger called Stephen's home the next day, Stephen told his mother he did not want to go anywhere then. For the next three days, Stephen felt "really bad" burning pain whenever he sat down or "went to the restroom." He did not immediately tell anyone about the sodomy incident because he was upset and afraid that people would call him "gay." He finally told his mother in November 2001, after he was expelled from school for getting into fights. Stephen was always angry, wanting to prove that he could still be a man.

**Count 4 - Jordan A.**

Jordan A. modeled for Luna Bay about a year when he was ten years old. He spent the night at Feiger's house every weekend. Other boys were there. He wore nightshirts and underwear with bows. Feiger rubbed Jordan's back while Jordan was wearing fancy pants, touching Jordan's upper and lower back. Jordan felt uncomfortable.

**Count 5 and 6 - Donovan M.**
Donovan first met Feiger when he was about 12 years old in approximately 1993, modeled for him and spent the night at Feiger's house. Feiger had Donovan wear a nightshirt and panties. They watched television in Feiger's bedroom while Feiger rubbed Donovan's back. Feiger then rubbed Donovan's penis. (Count 5.) A month later, Donovan again spent the night and Feiger again fondled Donovan's penis. (Count 6.)
Donovan testified that bout two months later, he spent the night at the house of Luna Bay's photographer. They watched pornography in the living room after which the photographer touched Donovan's penis.
**Defense**
Feiger denied touching any of the boys in a sexual way. He massaged only their upper backs, shoulders and lower legs. He could only recall giving backrubs to six or seven boys. Feiger testified that after he had been convicted and released from prison, he was well aware of how much trouble he would be in if he sexually touched a child. He denied having a sexual interest with boys. He claimed he never felt tempted to touch his models improperly.
Feiger testified the "fancy pants" described by the witnesses were not all girl's underwear; they also included silky boy's underwear. He gave the boys Luna Bay nightshirts to sleep in and whatever underwear was available and clean. The girl's underwear were samples from Luna Bay's project to develop a line of girl's underwear (which never occurred) and he gave them to the boys to wear if they were the only clean available underwear. He testified Stephen was with him when he went to a department store and bought a pair of girl's underwear but, denied telling the sales clerk that he had a daughter or niece; he was buying the underwear "for samples."

(Lodgment 5 at 2-7)

**B.    Procedural Background**

The parties do not dispute that the petition is timely and the claims raised have been exhausted. The full procedural history of the case is found in the Report.

**C.    Standard of Review of a Habeas Corpus Petition**

Because petitioner filed this habeas petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") governs this case *Gill v. Ayres*, 342 F.3d 911, 917 (9th Cir. 2003). Under AEDPA, a federal court can grant habeas relief where a state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision can be "contrary to" federal law "if the state court applies a rule

different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000), *overruled in part on other grounds in Lockyer v. Andrade*, 538 U.S. 63 (2003); *see Bell*, 535 U.S. at 694. To be an "unreasonable" application of Supreme Court precedent, a state court decision has to be more than merely "erroneous," *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); it must be "objectively unreasonable," *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, this Court does not review the merits underlying the conviction, *see Coleman v. Thompson*, 501 U.S. 722, 730(1991), but rather looks to the highest state court that rendered a reasoned decision and inquires whether the conviction was procured in violation of the constitution or federal law. *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

AEDPA also requires deference to the state court's findings of fact, presuming them correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, a state court decision will be found to be "based on an unreasonable determination of the facts in light of the evidence presented" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." *Jeffries v. Wood*, 114 F.3d 1484, 1499-1500 (9th Cir. 1997) (*en banc*), *overruled on other grounds in Lindh v. Murphy*, 521 U.S. 320 (1997) (internal quotations omitted).

When there is no reasoned decision from the state's highest court, the federal court must "look through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the state court gives no reasoned explanation for its decision on a petitioner's federal claim, then the court must "review the record to determine whether the state court clearly erred in its application of Supreme Court law." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *see Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002) (holding that when the state

court does not give a reason for its decision, "review of the record is the only means of deciding whether the state court's decision was objectively reasonable").

**D.     Objections to the Report**[1]

    **1.     Insufficient Evidence re: Counts 2 and 3**

Petitioner contends that counts 2 and 3[2] were not supported by sufficient evidence concerning the lewd and lascivious acts that occurred specifically in 2000 with respect to the victim, Stephen C. Petitioner argues that Stephen's testimony was "generic" concerning the time period when the alleged acts occurred, and some of Stephen's testimony at trial was inconsistent with testimony he gave during the preliminary hearing about the timing of certain incidents.

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); accord *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005, as amended July 8, 2005), *cert. denied*, 546 U.S. 1137(2006). A state prisoner who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Nevertheless, a federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). In reviewing an insufficient-evidence claim in habeas proceedings, a federal court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319(1979); *Juan H.*, 408 F.3d at 1274. The *Jackson* standard is applied with specific reference to the applicable state law defining the elements of the crime at issue. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir.)(*en banc*), *cert.*

---

[1] Petitioner's objections are not specifically directed to the magistrate judge's analysis in his Report. Instead, petitioner's objections are the very same arguments and reasons provided in his petition and traverse and as found in the opening and reply briefs that he filed in the state Court of Appeal, copies of which petitioner sent to the court with his traverse.

[2] Count 2 alleged petitioner rubbed Stephen's leg and back while asking to rub under his fancy pants; and Count 3 alleged petitioner rubbed Stephen's back.

*denied*, 543 U.S. 956 (2004).

A federal habeas court "makes no determination of the facts in the ordinary sense of resolving factual disputes." *Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir.2007) (internal quotation marks omitted), vacated in part, 503 F.3d 822 (9th Cir.) and petition for cert. filed, No. 07-8829 (U.S. Jan. 10, 2008). A federal court faced with a factual record "that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also Wright v. West*, 505 U.S. 277, 296-97(1992); *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000)( *en banc*). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks, brackets and citation omitted). In addition, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *see also Sarausad*, 479 F.3d at 678 ("A jury's credibility determinations are entitled to near-total deference[.]").

The ultimate question on federal habeas review is not whether the court agrees with the jury's conclusions, but only whether those conclusions are within the spectrum of rational results. *Payne v. Borg*, 982 F.2d 335, 338-39 (9th Cir. 1992, as amended March 3, 1993), *cert. denied*, 510 U.S. 843 (1993). Furthermore, in post-AEDPA cases, where a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" *Jackson*, a reviewing federal court applies an additional layer of deference. *Juan H.*, 408 F.3d at 1275 n. 13. Thus, the federal court merely inquires "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable' application of *Jackson*." *Sarausad*, 479 F.3d at 677; *see also Williams*, 529 U.S. at 409 (Under 28 U.S.C. § 2254(d)(1), the federal habeas court asks "whether the state court's application of clearly established federal law was objectively unreasonable.").

The California Court of Appeal recited that "[a] person is guilty of violating section 288(a) if he or she touches a child under the age of 14 years 'with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child.'"

Additionally, the Court of Appeals stated that to sustain a conviction, "it is not necessary that the child testify to the specific date of the act" by relying on *People v. Jones*, 51 Cal.3d 294, 205, 322-23 (1990).

The Court of Appeals found there was sufficient evidence for Counts two and three by noting that Stephen testified that when he was between the ages of six and 12 years old, during the years 1994 through 2000, he spent the night at petitioner's house at least "a hundred times," petitioner gave backrubs to Stephen on approximately 75 occasions, and petitioner would attempt to put his hand under the "fancy pants" underwear that petitioner had Stephen wear. (Lodgment No. 5 at 8).

The Court of Appeals also discounted petitioner's contention that Stephen's admission during the trial showed that he had "made up" the incident during his preliminary hearing testimony.  The Court of Appeals determined that the record indicated that Stephen's testimony at trial, when read as a whole, showed that Stephen never recanted the occurrence of the incident but instead admitted that the incident happened before Christmas rather than after.  In other words, the Court of Appeals found that when viewing the evidence in the light most favorable to the prosecution, a rational fact-finder could have reasonably determined beyond a reasonable doubt that petitioner had touched Stephen in a sexual manner in 2000. *Id*. at 8-9.

Having reviewed the record, the Court finds that Stephen's testimony describing the sexual contact over the course of several years amounted to sufficient evidence for the trier of fact to conclude beyond a reasonable doubt and in conformity with *Jackson* that petitioner committed lewd and lascivious acts upon Stephen in 2000.  Thus, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

**2.     Sixth Amendment Right to an Impartial Jury**

In his motion for new trial, petitioner contended some jurors improperly considered information about the death of Brent Badgerow ("Badgerow"), the son of a witness.  Badgerow was a young man who knew petitioner and who had acted as a model for petitioner.  Counsel for petitioner argued that after the trial at least one juror mentioned in his presence the "suicide" of Badgerow, the manner of Badgerow's "contacts" with appellant, and a comment to the effect

that the jury knew that his suicide would have happened.  The prosecutor, who was also present at the time of the juror's statements declared that the juror had asked how Badgerow died.  The prosecutor also declared that the sole juror did not indicate the matter was discussed during deliberations.  Because the trial court refused to disclose the jurors' names and to conduct an evidentiary hearing to determine whether, and to what extent, any juror misconduct occurred, petitioner contends his Sixth Amendment right was violated.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. CONST. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982). When the jury breaches this duty by considering extraneous facts not introduced in evidence, a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence.  *Hughes v. Borg*, 898 F.2d 695, 699 (9th Cir.1990).  But, "the extent, if at all, to which the jurors saw or discussed the extrinsic evidence," is a question of historical fact as to which the state court's findings are entitled to a presumption of correctness.  *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir.1988); *see also* 28 U.S.C. § 2254(e).

Additionally, it is clearly established federal law that prejudicial extraneous influences on a jury constitutes misconduct which may result in the reversal of a conviction.  *Parker v. Gladden*, 385 U.S. 363 (1966) (bailiff's prejudicial comments warranted reversal).  But petitioner bears the burden of establishing that a juror's consideration of extrinsic material had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Rushen v. Spain*, 464 U.S. 114, 115-19 & n. 3 (1983) (affirming state court's determination that a juror's ex parte communication was harmless beyond a reasonable doubt); *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir .1996) (applying "harmless-error" standard when a veniremember stated during voir dire that he had read in a newspaper that the defendant had "pleaded guilty at one time and changed it").

"Clearly established federal law, as determined by the Supreme Court, does not require

state or federal courts to hold a hearing every time a claim of juror bias is raised." *Tracey v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir.2003), *cert. denied*, 543 U.S. 864 (2004).

Under California law, a defendant is entitled to a hearing to obtain juror identifying information only if he first presents a petition that establishes good cause for the information. CAL. CODE CIV. PROC § 237; *People v. Jefflo*, 63 Cal. App.4th 1314, 1318-1323, fn. 8 (1998). But the court does not need to set the matter for a hearing if the petition and declaration fail to establish a prima facie showing of good cause for the release of juror information or if there exists "a compelling interest against disclosure." CAL. CODE CIV. PROC., § 237(b), (d). To establish good cause a defendant must set forth a sufficient showing to support a reasonable belief that jury misconduct occurred. *See People v. Jones* 17 Cal. 4th 279, 317 (1998); *see also Jefflo*, 63 Cal. App.4th at 1321-1322, fn. 8.

After considering counsels' declarations, the trial court denied petitioner's motion for release of the jurors' personal identifying information because petitioner had failed to make a *prima facie* showing of good cause as required by Code of Civil Procedure § 237.[3]

---

[3]California Code of Civil Procedure section 237 requires in pertinent part:
   (a)(1) The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines that a compelling interest, as defined in subdivision (b), requires that this information should be kept confidential or its use limited in whole or in part.
   (2) Upon the recording of a jury's verdict in a criminal jury proceeding, the court's record of personal juror identifying information of trial jurors, as defined in Section 194, consisting of names, addresses, and telephone numbers, shall be sealed until further order of the court as provided by this section.
   (3) For purposes of this section, "sealed" or "sealing" means extracting or otherwise removing the personal juror identifying information from the court record.

CAL. CODE CIV. PROC. § 237(a).

Section 237, subdivision (b), provides in pertinent part:
   Any person may petition the court for access to [personal juror identifying information]. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm....

In reviewing this claim, the Court of Appeals affirmed the trial court's decision finding that the statements reported by counsel demonstrated that "[n]othing in these facts show any juror had known how Badgerow's son had died or had discussed this matter during deliberations. Rather, all these facts show is a curiosity about the death of a witness's son and a comment upon learning how the son had died." (Court of Appeals Decision at 16-17).

Here, the trial judge was aware of the scope and nature of the post-verdict juror questions and he had before him counsel's declarations supporting the conclusion that no juror had discussed the possible cause of Badgerow's death during deliberations. *See Burks v. Borg*, 27 F.3d 1424, 1432 (9th Cir. 1994) (habeas court bound by state courts' finding that juror either was not exposed to or had no recollection of extraneous prejudicial information). Thus, the Court of Appeals, in affirming the trial court, determined that petitioner had not made a *prima facie* showing of good cause to support an evidentiary hearing.

Petitioner has not met his burden of establishing that improper material was discussed during deliberations or that a juror's consideration of extrinsic material had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Under the circumstances of this case, an evidentiary hearing was not constitutionally required. Thus, the decision of the California courts was neither contrary to nor an unreasonable application of clearly established Supreme Court law

### 3. Introduction of Prior Lewd Acts

Petitioner contends that the trial court violated his due process rights when it admitted evidence of prior acts of sexual misconduct under California Evidence Code § 1108 for the sole purpose of proving his propensity to commit the charged sex offenses. Specifically, petitioner argues that California Evidence Code § 1108 unconstitutionally permits juries to convict defendants using criminal propensity evidence.

At trial, the court permitted the prosecution to introduce evidence of petitioner's two prior convictions of lewd acts on minors pursuant to California Evidence Code § 1108.

---

CAL. CODE CIV. PROC. § 237(b).

A state court's admission of evidence is not subject to federal habeas review unless the evidentiary ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of a fundamentally fair trial guaranteed by due process. *Pulley v. Harris,* 465 U.S. 37, 41 (1984). There are no published federal opinions which have addressed the constitutionality of section 1108. But the Ninth Circuit has held that Federal Rule of Evidence 414, which is analogous to section 1108, does not violate the right to due process. *United States v. LeMay*, 260 F.3d 1018, 1027 (2001). Rule 414 states that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." *Id.* at 1024. The court held in *LeMay* that Rule 414 is not unconstitutional because it is limited in its function by Rule 403. *Id.* at 1026-27. Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative. *Id.* at 1027. The court reasoned that this balancing process eliminates any due process concerns about Rule 414, stating: "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *Id.* at 1026.

The reasoning of *LeMay* applies to this case as well because California Evidence Code § 1108 is similar to Rule 414. Evidence admissible under section 1108 is limited by section 352. CAL. EVID. CODE § 1108(a). Section 352 parallels Rule 403 of the Federal Rules of Evidence because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. Just as Rule 403 did in *LeMay*, Section 352 ensures evidence admitted under Section 1108 will not infringe on the right to a fair trial guaranteed under the Due Process Clause.

When admitting prior sex offense evidence, the trial court must weigh the evidence under § 352 to safeguard the defendant's rights. *People v. Falsetta*, 21 Cal.4th 903, 916-918 (1999). The trial court's discretion under § 352 "will not be disturbed unless the court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of

justice." *People v. Yovanov*, 69 Cal.App. 4th 392, 406 (1999).  The Court of Appeals noted in petitioner's case that "his due process argument has been considered and rejected by the California Supreme Court in [*Falsetta*] and we are bound by that decision."

Notwithstanding the above discussion, the Supreme Court has never held that the admission of evidence of prior crimes violates the right to due process.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) (declining to rule on the constitutionality of propensity evidence). Because federal habeas relief may not be granted unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, *see* 28 U.S.C. § 2254(d)(1), when there is no "clearly established law as determined by the United State Supreme Court," as here, habeas relief is barred.  Petitioner's objection to the Report is overruled.

**4.   Due Process Rights re: Jury Instruction**

Petitioner contends that the jury instruction given, California Jury Instruction ("CALJIC") 2.50.01, permitted the jury to convict petitioner by a preponderance of the evidence based on the use of prior lewd acts.

The instruction used during petitioner's trial was amended in 2001.  The trial judge used the 2001 version in instructing the jury.  The jury heard:

> Evidence from Mr. Kirk Harper has been introduced for the purpose of showing the defendant engaged in a sexual offense on one or more occasions other than that charged in the case. . . .
>
> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes for which he is now accused.
>
> However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.  The weight and significance of the evidence, if any, are for you to decide.
>
> Unless you are otherwise instructed.  You must not consider this evidence for any other purpose.
>
> Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a sexual offense other than those for which he is on trial.

> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offense.

(Reporter's Appeal Transcript, Volume 7, Jury Instructions at 852-53)

In general, a challenge to jury instructions does not state a federal constitutional claim. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985)(citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v.. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983). Clearly established Supreme Court law holds that when there is a claim of instructional error, the question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146. Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

Here, the jury was instructed that if they found "by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes." The instruction makes clear that the crimes at issue in the trial were required to be proven beyond a reasonable doubt and not by a preponderance of the evidence.

Petitioner's reliance upon *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004) is unavailing because the jury instruction given in that trial was not the same version used at petitioner's trial. The instruction used in petitioner's case was an amended version of CALJIC 2.50.1 that corrected the problems that caused reversal in the *Gibson* case. Petitioner has not provided any basis for arguing that *Gibson* should be applied in the present case.

Given the other evidence presented at trial, it is unreasonable to believe the jury convicted

petitioner on the basis of the prior acts alone, or viewed them as more emotionally upsetting than the charges under consideration. Furthermore, the trial court read the appropriate jury instructions limiting the use of prior offenses. Finally, the instruction as given did not lessen the government's burden of proof with respect to the crimes charged. Therefore, the state appellate court's decision rejecting petitioner's claim concerning the given jury instruction is not objectively unreasonable. Thus, petitioner's objection is overruled.

### 5.     *Ex Post Facto* Law

In *Collins v. Youngblood*, 497 U.S. 37 (1990), the Court stated that a law violated the *ex post facto* clause only if it: punishes as crime an act previously committed, which was innocent when done; makes the punishment for a crime more burdensome after its commission; or deprives one charged with a crime of any defense available under the law in effect when the act was committed. *Id.* at 42. The *Collins* Court also noted that a procedural change may constitute an *ex post facto* violation if it "affect[s] matters of substance," *Beazell v. Ohio*, 269 U.S. 167, 171 (1925), by depriving a defendant of "substantial protections with which the existing law surrounds the person accused of crime," *Duncan v. Missouri*, 152 U.S. 377, 382-383 (1894), or arbitrarily infringing upon "substantial personal rights." *Malloy v. South Carolina*, 237 U.S. 180, 183 (1915); *Beazell*, 269 U.S. at 171.

Prior to the incidents alleged in Counts 5 and 6 that occurred in 1993, petitioner had twice been charged with and convicted of lewd acts on minors. California enacted Evidence Code § 1108 after the commission of the acts underlying Counts 5 and 6. Evidence Code § 1108 permits the admission of evidence of prior lewd acts, evidence which was not permitted at the time the crimes were alleged to have been committed, to prove propensity. Petitioner thus contends application of Evidence Code § 1108 violated petitioner's constitutional right against *ex post facto* laws.

Petitioner relies on *Carmell v. Texas*, 529 U.S. 513, 522 (2000). In *Carmell,* the Court held that an amendment to a statute that authorized conviction of certain sexual offenses on the victim's testimony alone, when the prior statute had required corroborating evidence in addition to the victim's testimony, violated the *ex post facto* clause when applied to an offense committed

before the date of the amendment. *Id.* at 516, 522. But the *Carmell* Court also noted that:

> We do not mean to say that every rule that has an effect on whether a defendant can be convicted implicates the Ex Post Facto Clause. Ordinary rules of evidence, for example, do not violate the Clause. [citation omitted]. Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption.

*Id.* at 533.

The *Carmell* Court also distinguished between a "sufficiency of the evidence rule" and a rule governing the admissibility of evidence:

> Nor do [evidence admissibility] rules necessarily affect, let alone subvert, the presumption of innocence. The issue of the admissibility of evidenc eis simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law may be sustained.

*Id.* at 546-47.

Although petitioner contends that the admission of evidence of prior sexual offenses that occurred prior to enactment of Evidence Rule § 1108 makes it easier for the prosecution to obtain a conviction, Evidence Rule § 1108 neither affects the quantum of evidence sufficient to convict petitioner nor subverts the presumption of innocence. Instead Evidence Rule § 1108 merely permits the admission of evidence. Thus, under clearly established federal law, the state did not violate petitioner's right to be free from retroactive punishment when it allowed § 1108 evidence to be presented at his trial. The decision of the California court was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

### 6. Extension of Statute of Limitations

Petitioner contends that California Penal Code § 803(g), which grants an extension of the statute of limitations for child molesters, violates the *ex post facto* clause of the Constitution and relies on *Stogner v. California*, 539 U.S. 607 (2003). The Supreme Court in *Stogner* found a law unconstitutional when the it was enacted after the expiration of a statute of limitations and it revived the prosecution. The Court concluded that it was a classic *ex post facto* law and was no different than a statute that authorizes punishment for an act that was not illegal at the time it

was committed. *Stogner*, 539 U.S. at 614-15. The critical element in *Stogner* was the fact that the amendment in question became effective after the statute of limitations had already expired. *Stogner*, 539 U.S. at 618-19. The Court observed that the evils sought to be avoided by the *ex post facto* clause were visited upon Stogner because he went years after the statute of limitations had past under the belief that he would not be prosecuted, and there was an irrebuttable presumption that one is prejudiced under such a belief. *Id.* at 611.

Here, Penal Code § 803(g) was enacted while the limitations period was still running on the charges against petitioner. Notwithstanding petitioner's belief that *Stogner* applies to the extension of unexpired as well as expired statutes of limitations, *Stogner* expressly stated it was not striking down this type of statute with respect to unexpired statutes of limitations. *See id.* at 618-19. Therefore, the California Court of Appeal's determination that Penal Code § 803(g) did not violate the *ex post facto* clause was neither "contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254.

### 7. Cruel and Unusual Sentence

Petitioner's final claim is that his sentence of 385 years to life violates the Eighth Amendment because a multi-century sentence that is beyond the functional equivalent of life without the possibility of parole is cruel and unusual punishment.

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (*quoting Solem v. Helm*, 463 U.S. 277, 288 (1983)). The "gross disproportionality principle, the precise contours of which are unclear, [is] applicable only in the 'exceedingly rare' and 'extreme' case" in noncapital sentences. *Lockyer*, 538 U.S. at 72 (quoting *Harmelin*, 510 U.S. at 1001) (Kennedy, J., concurring); *Ramirez v. Castro*, 365 F.3d 755, 762-63 (9th Cir. 2004).

The Supreme Court has traditionally deferred to state legislatures to determine the length of sentences for crimes classifiable as felonies. *Rummel v. Estelle*, 445 U.S. 263, 274 (1980). Federal caselaw is also well established that legislatures may punish rescidivists more severely

than first-time offenders. *Rummel*, 445 U.S. at 276; *Bartlett*, 262 F. Supp. 2d at 1063. In addition, the Supreme Court has deferred to state legislation concerning rescidivist sentencing such as California's Three Strikes Law, and found that such statutes serve the legitimate goal of deterring and incapacitating repeat offenders. *Ewing v. California*, 538 U.S. 11, 20-28 (2003). For example, in *Ewing*, the Supreme Court found that a sentence of 25 years-to-life under California's Three Strikes for grand theft of three golf clubs was not grossly disproportionate. *Id*. at 28-31.

Here, it is undisputed that previously petitioner had twice been convicted of lewd acts on children under 14 years old and served time for those convictions; the second conviction occurred while petitioner was on parole for the first conviction; and the present offenses involved four victims. Under these circumstances, petitioner's sentence is not grossly disproportional nor is this the 'exceedingly rare' and 'extreme' case" that violates constitutional principles.

Thus, petitioner's assertion of a violation of the Eighth Amendment based on his sentence is neither contrary to nor an unreasonable application of clearly established Supreme Court authority within the meaning of 28 U.S.C. § 2254(d). Petitioner's objection to the magistrate judge's determination is overruled.

## CONCLUSION

Based on the foregoing, the Report and Recommendation is **ADOPTED** in its entirety. Petitioner's objections to the Report are **OVERRULED**. Petitioner's Petition for Writ of Habeas Corpus is **DENIED**. The Clerk of the Court is directed to **ENTER JUDGMENT** in accordance with this Order.

**IT IS SO ORDERED.**

DATED: April 16, 2008

M. James Lorenz
United States District Court Judge

/ / /

/ / /

COPY TO:

HON. PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL